MOSES R. McHENRY *vs*. THE PHILADELPHIA, WILMINGTON and BALTIMORE RAILROAD Co.

A common carrier is bound to deliver goods safely; and to store them when necessary; unless a well known usage be contrary.

The obligation of carriers is more stringent than that of warehouse-men; who are bound only to ordinary care.

Tʜɪs was an action on the case, against defendants, as common carriers, for negligence. The plaintiff booked a large quantity of rags for transportation by defendants' railroad, from Philadelphia to Wilmington. They were carried safely, and left at Wilmington, without storage, exposed to the weather, by which they were injured.

The defendants contended, that they were bound only for the safe transportation of the goods, and delivery at the place of consignment. They were carriers, and not warehouse-men. They were not bound to store the goods; but plaintiff, to whom they were conconsigned, was bound to receive them from the cars at Wilmington, or to provide storage. (6 *Hill's Rep*. 157; 4 *T. Rep*. 311.) This was the usage. (*Story Bailm*. 538, § 543; 17 *Wend. Rep*. 305.)

The plaintiffs contended : 1st. That a common carrier was bound to *deliver* the goods to the consignee, or owner either actually or constructively, that is, by notice. (4 *Kent Com*. 597, 604; 7 *C. & R*. 21, 399; 15 *Johns. Rep*. 39; 4 *Pick. Rep*. 371; *Story Bailm*. 536; 33 *C. L. R*. 364; 6 *Watts & Serg*. 62.) 2d. That defendants were liable either as bailees for hire, or depositories without compensation, for such negligence as leaving goods exposed to the weather. 3d. That there was no proof of a custom, such as would control the law. (2 *Johns. Rep*. 335; 5 *Watt's Rep*. 178.)

Bᴏᴏᴛʜ, *Chief Justice*, charged the jury.—A common carrier is one who undertakes and exercises, as a public employment, the transportation or carriage of goods for persons generally, from place to place, whether by land or by water, and to deliver them at the place appointed, for hire or reward, and with or without a special agreement as to price. (2 *Kent's Com*. 598; *Story on Bailments*, *sec*. 495; *Chitty on Cont*. 149.)

The owners of stage-wagons, stage-coaches, and railroad cars, who carry goods, as well as passengers, for hire; wagoners, teamsters, and cartmen, who undertake as a common employment, to carry goods for hire, from one town to another; the masters and owners of ships, vessels, steamboats, barge owners, canal boatmen,

and ferrymen, employed in the like business, are all common carriers.

A common carrier is bound to exercise the strictest care, and to deliver safely at their place of destination, the goods entrusted to him. He is regarded by the law in the light of an insurer; and in case the goods are injured, lost or destroyed, nothing will excuse or discharge him, but the act of God, or of the public enemies. By the act of God, is meant such inevitable accident as cannot be prevented by human care, skill or foresight; but results from natural causes; such as lightning and tempest, floods and inundation.

This rule of the common law has been spoken of as severe and rigorous; but like most of the principles of the common law, it is founded in wisdom, and dictated by sound policy. The exigencies of society require the adoption of the rule. Men engaged in the various business transactions of life, are obliged from necessity, to entrust common carries with their goods. If such carriers are to be excused from all loss, destruction of, or injury to goods, in case it be shown that they have used due care, precaution or attention, the party employing them, could never show the want of such care, unless he had an agent to accompany his goods during the whole time occupied in their transportation. The carrier might at all times, by fraud and collusion, or by means of his own agents or servants, throw the burden of proof upon the owner or consignee of goods, by making out a statement of facts, which, although untrue in itself, would show the exercise of ordinary care and diligence. Therefore, in actions against common carriers, founded on their ordinary liability for the loss of goods, the inquiry is not whether the carrier has used due care, or been guilty of negligence, but whether he can show that the loss happened by inevitable accident or by the public enemies.

In the present case, the injury to the goods did not arise from accident; but as it occurred after their arrival at Wilmington, the defendants insist, that the goods were then out of their possession; and therefore, that they are not liable; that by the uniform course and usage of their business, when goods safely arrive at the depot in Wilmington, and are deposited on the pavement, it is considered as a delivery to the owner or consignee; exonerates the defendants from any further care or control over the goods, and terminates their liability as common carriers.

The responsibility of a common carrier commences the moment he has received the goods for transportation, and continues until he

has make due delivery of them at their place of destination; or has otherwise legally discharged himself of the custody or control of the goods in his character of common carrier.   What constitutes such a delivery, or what exonerates him from the custody of the goods as a common carrier, depends on the nature of the trade or business in which he is engaged, and the usage or custom in relation to it.

If it be part of the carrier's business, when the goods have arrived at their place of destination, to deliver them at the house of the owner or consignee, he is bound to make such delivery; and, until he has done so, the goods continue in his custody as a common carrier.   Therefore, if instead of delivering them, he puts them into a warehouse for safe keeping, and they are consumed by accidental fire, he is liable for the loss.   (*Hyde* vs. *Trent & Mersey Navigation Company*, 5 *Term. Rep.* 389.)   But where he receives goods to be carried by him from one place to another, which is at the termination of his route; thence to be forwarded by a distinct conveyance to another place; it is his duty, as soon as he arrives at the place to which he engaged to carry the goods, to deliver them to the carrier, (if there to receive them,) by whom they are to be conveyed to their place of final destination.   If such carrier be not present, or there be no agent, to receive the goods, it is the duty of the former carrier to deposit them in a warehouse for the purpose of being forwarded.   When he has done so, he discharges himself from the custody of the goods as a common carrier; and becomes in regard to them, a mere warehouse-man.   (*Garside* vs. *Proprietors of the Trent & Mersey Navigation Co.*, 4 *Term Rep.* 581 ; *In re Webb et al.*, 8 *Taunt.* 443 ; 4 *Com. Law Rep.* 159.)

The general rule is, that a common carrier remains liable until an actual delivery of the goods to the owner or consignee.   But where it is the usage of the particular trade, or the course of the business in which the carrier is engaged, to deposit goods at regular stopping places on the carrier's route, to which they are directed, it seems that such deposit is sufficient, without an actual delivery to the owner or consignee.   But the usage or custom must have been of such long continuance and notoriety, as to warrant a jury to find that the owner or consignee of the goods had knowledge of it; because having such knowledge, it is presumed that the usage made part of the contract, and is equivalent to a direction given by the owner or consignee to the carrier, to deposit the goods at the stopping place. (*Gibson* vs. *Culver & Brown*, 17 *Wendell* 305 ; 2 *Kent's Com.* 605, *note, d.*)

But although the existence of such usage be fully established by sufficient evidence, yet, if the owner or consignee be not present to receive the goods, at the time of their arrival, the carrier will not be excused, if he leaves them at the stopping place, in such a situation as exposes them to injury by the weather, or loss by theft. It is his duty to have them put in some safe place for security and protection; and until he has done so, his liability as a common carrier does not cease.

Whether such usage exists in the present case, and was known to the plaintiff, is a question for the jury. Admitting both facts to be proved, it became the duty of the defendants when the goods arrived in Wilmington, to make a personal delivery of them to the plaintiff or his agent, if at the depot; but if neither was there to receive them, it became their further duty to put them in a warehouse, or other secure place, for safe keeping; and immediately to give notice to the plaintiff to come and take them away. By storing the goods, the defendants would have become mere warehouse-men; and been liable only for such losses as arise from want of good faith, reasonable care and ordinary diligence. But until the goods were safely put in a warehouse, the defendants continued responsible as common carriers; and, therefore, are liable for any loss or injury that happened in the mean time; unless they can bring themselves within one or the other of the two excepted cases, namely: the act of God, or of the public enemies.

But it is said, that the defendants are not liable after the goods were deposited on the pavement at their depot at Wilmington; because they had no warehouse. The answer is, that the business in which they were engaged, required them to have a warehouse. If they had none of their own, they were bound to find one. The costs and expenses of the storage of goods is a proper subject of charge against the owner or consignee, until, after notice given, he comes and takes them away.

If it is proved in this case, that the goods were injured in their transit from Philadelphia to Wilmington; or after their arrival at the latter place, and before storage; the defendants are liable as common carriers. The measure of damages is the difference between the value of the goods when delivered to the defendants in Philadelphia, and the value of them in their damaged state, when received by the plaintiff at Wilmington.                    Verdict for plaintiff.

*Johnson* and *Rogers,* for plaintiff.

*Wales* and *Gilpin,* for defendants.